# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

WBCMT 2006-C29 OFFICE 4250, LLC,  )
           )
     **Plaintiff,**        )
           )
           ) **C.A. No. N14L-03-040 FWW**
     **v.**          )
           )
CHESTNUT RUN INVESTORS, LLC,  )
           )
     **Defendant.**     )

Submitted: July 10, 2015
Decided: July 30, 2015

Upon Plaintiff's Motion for Summary Judgment
**GRANTED.**

## OPINION AND ORDER

Matthew G. Summers, Esquire (argued) and Jessica C. Watt, Esquire, Ballard Spahr LLP, 919 N. Market Street, 11th Floor, Wilmington, Delaware 19801-3034, Attorneys for Plaintiff.

Benjamin J. Berger, Esquire and David B. Anthony, Esquire (argued), Berger Harris LLP, 1105 N. Market Street, I.M. Pei Building, 11th Floor, Wilmington, Delaware 19801, Attorneys for Defendant.

**WHARTON, J.**

## I.    INTRODUCTION

Before the Court is WBCMT 2006-C29 OFFICE 4250, LLC's ("Plaintiff") Motion for Summary Judgment with regard to an action to foreclose on commercial real property owned by Chestnut Run Investors, LLC ("Defendant") located at 4250 Lancaster Pike, Wilmington, Delaware 19720 ("Property"). Plaintiff is not the original lender that received the mortgage and promissory note but purports to have acquired an interest in enforcing the promissory note by a series of alleged assignments.  Plaintiff requests that the Court determine 1) whether Plaintiff has the right to enforce the promissory note related to the Property under Article 3 of the Uniform Commercial Code ("U.C.C."); 2) whether Defendant lacks standing to challenge the validity of the alleged assignments of the promissory note to Plaintiff; and 3) whether Plaintiff is entitled to a judgment for Plaintiff and *in rem* against the Property in the amount of $20,000,057.81 as of February 11, 2014, plus interest from February 11, 2014 to June 8, 2015 in the amount of $2,244,263.33, plus interest from June 8, 2015 to the date of entry of judgment at the per diem rate of $4,646.51, plus interest from the date of judgment to the date of payment, attorney's fees and costs.

Applying Super. Ct. Civ. R. 56(c) to Plaintiff's Motion for Summary Judgment, the Court finds that 1) the factual record is clear that Plaintiff is entitled to enforce the promissory note as a nonholder in possession of the instrument who

has the rights of a holder; 2) because the Court finds that Plaintiff is entitled to enforce the promissory note, the Court need not address the merits of Plaintiff's argument that Defendant lacks standing to challenge the alleged assignments of the promissory note; and 3) the undisputed facts support Plaintiff's request for the amount of the judgment. Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED**.

## II. FACTUAL AND PROCEDURAL CONTEXT

On November 2, 2006, in connection with the financing of the Property, Wachovia Bank, N.A. ("Wachovia"), loaned Defendant $18,400,000.00 (the "Loan").[1] Defendant executed and delivered a promissory note (the "Note"), pursuant to which Defendant promised to repay the Loan, and a Mortgage, Security Agreement and Fixture Filing ("Mortgage") which granted a first-priority lien against the Property as security for the Loan.[2] The Mortgage was recorded with the New Castle County Recorder of Deeds ("Recorder of Deeds") on November 3, 2006 as Instrument No. 20061103-0104847.[3] On or about November 10, 2006, the Note was delivered by counsel for Wachovia to Wells Fargo Bank, N.A. ("Wells Fargo Bank").[4]

---

[1] *See* Vinton Dep., Ex. A to Pl.'s Opening Br., D.I. 27, 20: 7-15; 21:6-8.
[2] *See* Pl.'s Opening Br. at Ex. B - Ex. C.
[3] *See id.* at Ex. C.
[4] *See id.* at Ex. F.

## A. Alleged Loan Assignments

Between the time that the Note and Mortgage were executed and delivered to Wells Fargo Bank and the commencement of this action, several documents relating to the Mortgage and Note were executed by various entities. Specifically, documents were executed by Wachovia to Wells Fargo Bank, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C29 ("Wells Fargo"); Wells Fargo to Bank of America, N.A., as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C29 ("Bank of America"); Bank of America to U.S. Bank National Association, as trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C29 ("U.S. Bank"); and U.S. Bank to Plaintiff. The record contains the full text of the documents but, for purposes of this Opinion, the Court finds it necessary to include only a brief summary of the relevant excerpts from the various documents.

### 1. *Wachovia to Wells Fargo*

Wachovia executed a document titled "Assignment of Mortgage, Security Agreement and Fixture Filing" that purported to assign the Mortgage to Wells

Fargo.[5] The document was recorded with the Recorder of Deeds as Instrument No. 20070821-0074091 on August 21, 2007.[6] Wachovia also executed the undated "Allonge" to the Note payable to Wells Fargo that is neither notarized nor made under seal.[7] On February 3, 2015, Wachovia executed the "Corrective Allonge" to the Note payable to Wells Fargo that is witnessed, notarized and made under seal by Wells Fargo as successor by merger to Wachovia.[8] Wachovia executed a document titled "Assignment of Note and Ancillary Security Documents" on January 26, 2007.[9] The notarized document provides that

> [Wachovia] does hereby transfer, assign, grant and convey to [Wells Fargo]…all of the right, title, interest and benefit of [Wachovia] in and to the following documents…and does hereby grant and delegate to [Wells Fargo]…any and all of the duties and obligations of [Wachovia] under the following documents from and after the date hereof:
>   a. The Note;…[10]

2.    *Wells Fargo to Bank of America*

Wells Fargo executed a document titled "Assignment of Mortgage, Security Agreement and Fixture Filing" that purported to assign the Mortgage to Bank of America.[11] The document was recorded by the Recorder of Deeds on August 19,

---

[5] *See id.* at Ex. J.
[6] *See id.*
[7] *See id.* at Ex. I.
[8] *See id.* at Ex. K.
[9] *See id.* at Ex. H.
[10] *Id.* at Ex. H ¶ 1.a.
[11] *See id.* at Ex. N.

5

2009 as Instrument No. 20090819-0054590.[12] Wells Fargo also executed the "Allonge" to the Note payable to Bank of America that is not dated, notarized or made under seal.[13] On February 12, 2015, Wells Fargo executed the "Corrective Allonge" to the Note made payable to Bank of America.[14] The "Corrective Allonge" is witnessed, notarized and sealed.[15] On March 31, 2009, Wells Fargo executed a document titled "Omnibus Assignment" which provides that Wells Fargo

> transfers, assigns, delivers, sets-over and conveys to Bank of America...all right, title and interest of [Wells Fargo] in and to the [L]oan…including without limitation all of [Wells Fargo's] right, title and interest in any claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan, together with any other documents or instruments executed and/or delivered in connection with or otherwise related to the Loan.[16]

3. *Bank of America to U.S. Bank*

Bank of America executed a document titled "Assignment of Mortgage, Security Agreement and Fixture Filing" that purported to assign the Mortgage to U.S. Bank on October 4, 2013.[17] The Recorder of Deeds recorded the document as

---

[12] *See id.* at Ex. N.
[13] *See id.* at Ex. M.
[14] *See id.* at Ex. O.
[15] *See id.*
[16] *See id.* at Ex. L.
[17] *See id.* at Ex. R.

Instrument No. 20131021-0067018 on October 21, 2013.[18] On October 24, 2011, Bank of America also executed the "Allonge" to the Note payable to U.S. Bank that is neither sealed nor notarized.[19] On March 31, 2015, Bank of America executed the "Corrective Allonge" made payable to U.S. Bank.[20] The "Corrective Allonge" is witnessed, sealed and notarized.[21] On October 4, 2013, Bank of America executed a document titled "Omnibus Assignment of Loan Documents" that provides that Bank of America

> grant[s], bargain[s], sell[s], assign[s], deliver[s], convey[s], transfer[s] and set[s] over unto [U.S. Bank]…all of [Bank of America's] right, title and interest in and to the Loan and obligations with respect to the Loan, together with all rights, remedies, collateral, instruments or other documents made or granted in favor of [Bank of America] or its predecessors in interest in connection with the Loan, including, without limitation: (i) all right, title and interest in and to the Note;…[22]

4.      *U.S. Bank to Plaintiff*

U.S. Bank executed a document dated November 7, 2013 that is titled "Assignment of Mortgage, Security Agreement and Fixture Filing and Other Loan Documents" in which U.S. Bank purported to assign the Mortgage to Plaintiff.[23] The document was recorded by the Recorder of Deeds on November 19, 2013 as

---

[18] *See id.*
[19] *See id.* at Ex. Q.
[20] *See* Def.'s Answering Br., D.I. 30, at Ex. 9.
[21] *See id.*
[22] *See* Pl.'s Opening Br., at Ex. P.
[23] *See id.* at Ex. V.

Instrument No. 20131119-0072689.[24]  Additionally, on May 28, 2013, U.S. Bank executed the "Allonge" to the Note payable to Plaintiff.[25]  The "Allonge" is not sealed or notarized.[26]  On April 14, 2015, U.S. Bank executed the "Corrective Allonge" to the Note payable to Plaintiff.[27]  The "Corrective Allonge" is witnessed, sealed and notarized.[28]  On November 7, 2013, U.S. Bank executed an "Omnibus Assignment of Loan Documents" which provides that U.S. Bank

> grant[s], bargain[s], sell[s], assign[s], deliver[s], convey[s], transfer[s] and set[s] over unto [Plaintiff]…all of [U.S. Bank's] right, title and interest in and to the Loan and obligations with respect to the Loan, together with all rights, remedies, collateral, instruments or other documents made or granted in favor of [U.S. Bank] or its predecessors in interest in connection with the Loan, including, without limitation: (i) all right, title and interest in and to the Note;…[29]

## B.    Physical Location and Custody of the Note

On or about November 10, 2006, the Note was delivered by counsel for Wachovia to Wells Fargo Bank, N.A. ("Wells Fargo Bank").[30]  Wells Fargo Bank stored the original Note at a Minneapolis, Minnesota facility beginning on November 10, 2006 until May 2015 except when the Note was sent to LNR Partners, LLC ("LNR"), a special servicer, in Miami Beach, Florida from June 25,

---

[24] *See id.*
[25] *See id.* at Ex. U.
[26] *See id.*
[27] *See id.* at Ex. W.
[28] *See id.*
[29] *See id.* at Ex. T.
[30] *See id.* at Ex. F.

2013 through July 10, 2013 and, again, in May 2015.[31] Wells Fargo Bank

remained the custodian of the Note at all relevant times.[32] As of the date of oral

argument, counsel for Plaintiff represented to the Court that he had physical

possession of the Note.[33]

### C.     Plaintiff Commences Action and Calculates Payoff Amount.

Defendant has made no payment on account of the Loan since November 11,

2013.[34] By letter dated December 12, 2013, Plaintiff notified Defendant that

Defendant was in default and by letter dated February 4, 2014, Plaintiff accelerated

the Loan.[35] Section 1.5 of the Note provides the mechanism for performing and

verifying the calculation.[36] The document titled "Payoff Statement" reflects that,

as of February 11, 2014, the total amount to payoff the Loan was $20,000,057.81

("Payoff Amount").[37] Paragraph 19 of the Amended Complaint provides a

---

[31] *See* Solomon Dep., Ex. D to Pl.'s Opening Br., at 77:21-78:20; Pl.'s Opening Br. at Ex. G.
[32] *See* Pl.'s Reply Br., D.I. 31, at Ex. OO:

> **Interrogatory No. 5**: Identify the custodian of the Note when the Allonge containing the name Vanessa A. Orta was executed.
>
> **Response**: …[Plaintiff] states that at all times from November 10, 2006 through the commencement of the foreclosure action, Wells Fargo Bank, N.A., 1015 10[th] Avenue SE, Minneapolis, Minnesota 55414, was custodian of the Note on behalf of [Plaintiff] and its predecessors.

[33] Plaintiff's counsel brought the original Note to oral argument and Defendant does not dispute that Plaintiff has physical possession of the original Note.
[34] Vinton Dep., Ex. A to Pl.'s Opening Br., at 38: 21-23.
[35] *See* Pl.'s Opening Br., at Ex. CC - DD.
[36] *See id.* at Ex. B.
[37] *See id.* at Ex. GG.

"detailed summary of the outstanding balance of the Obligations, as of February 11, 2014" in chart form and categorizes various components of the Payoff Amount.[38] The chart lists, *inter alia*, $56,712.04 in "Misc. Fees and Charges."[39] The "Total Note Payoff" aggregating the categorized components of the Payoff Amount contained in ¶ 19 of the Amended Complaint is $20,000,057.81.[40]

Leah Solomon, Plaintiff's 30(b)(6) witness ("30(b)(6) Witness"), testified that she personally reviewed the underlying documents that Plaintiff relied upon in categorizing certain expenses as "Misc. Charges and Fees" in ¶ 19 of the Amended Complaint.[41] The 30(b)(6) Witness testified that the amount that makes up the "Misc. Charges and Fees" in the Amended Complaint should have been $4,000

---

[38] Am. Compl., at ¶ 19.
[39] *See id.*
[40] *Id.*
[41] *See* Solomon Dep., Ex. 12 to Def.'s Answering Br., at 118:3-119:14:

> Q: Have you performed any review of the fees in the row Miscellaneous Fees and Charges set forth in paragraph 19 of the amended complaint?
>
> A: I have…
>
> Q: When you performed your review did you look at any documents to aid you in your review of those fees?
>
> A: Yes, I did. I looked at some invoices.
>
> Q: And did the invoices that you reviewed…did you add them up?
>
> A: Roughly, yes.

instead of $56,000 based upon the underlying invoices but that, despite the error, the "Total Note Payoff" in the Amended Complaint was unaffected.[42]

On June 8, 2015, Plaintiff filed the Motion for Summary Judgment.[43]  In Plaintiff's Motion, Plaintiff seeks to enforce its rights under Article 3 of the U.C.C. and to obtain a judgment against Defendant.  The parties appeared before the Court for oral argument on July 10, 2015.

### III.   THE PARTIES' CONTENTIONS

Plaintiff asserts that Delaware law permits a mortgagee or assignee of the mortgagee's interest to foreclose on a mortgage pursuant to 10 *Del. C.* § 5061.[44]

---

[42] *Id.* at 119:15-23:

> Q: And what was the rough total for those invoices?
>
> A: About $4,000, not the $56,000 noted here, but the overall payoff amount.  I'm sorry, I am calling it the payoff amount, as reflected in the last line of this box, was identical.  I am referring to the $20,000,057.81 number.  It looks like somebody put a wrong number in this box for Miscellaneous Fees and Charges but yet arrived at the same total note payoff number.

[43] D.I. 27.

[44] *See* Pl.'s Opening Br. at 8-9:
> *Scire facias sur* mortgage foreclosure actions are governed by 10 *Del. C.* § 5061(a), which provides, in pertinent part:
>
>> [U]pon breach [sic] the condition of a mortgage of real estate by nonpayment of the mortgage money or nonperformance of the condition stipulated in such mortgage at the time and in the manner therein provided **the mortgagee, the mortgagee's heirs, executors, administrators, successors or assigns may, at any time** after the last day whereon the mortgage money ought to have been paid or other conditions performed, sue out of the Superior Court of the county wherein the mortgage premises are situated a writ of *scire facias*.

11

Plaintiff contends that "[f]or purposes of conferring legal standing, 'an assignment of [sic] mortgage is valid when it is attested to by 1 credible witness and it operates to convey all the rights and interest of the assignor.'"[45] Plaintiff asserts that "[t]he Mortgage Assignments satisfy all of these conditions, as they expressly convey all 'right, title, and interest' in the Mortgage to [Plaintiff], and were attested to and notarized."[46]

Plaintiff asserts that it is a party entitled to enforce the Note under U.C.C. Article 3 as adopted by both Delaware and Minnesota.[47] Plaintiff contends that the Note is a negotiable instrument under Delaware and Minnesota law.[48] Plaintiff asserts that under both Delaware and Minnesota law, "[a] person is entitled to enforce an instrument under the U.C.C. if the person is: '(i) the holder of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of a holder…' 6 *Del. C.* § 3-301; Minn. Stat. 336.3-301."[49]

Plaintiff first argues that it is the holder of the Note.[50] Plaintiff contends that, as the holder of the Note, it is entitled to enforce the Note because "(a) it is and at all times has been in possession of the original executed Note; (b) through

---

See 10 *Del. C.* § 5061 (emphasis added).

[45] *Id.* at 9 (quoting *CitiMortgage, Inc. v. Bishop*, 2013 WL 1143670, at *4, 6 (Del. Super. Mar. 4, 2013)).

[46] *Id.* at 9.

[47] *Id.* at 10.

[48] *Id.* at 11.

[49] *Id.*

[50] *Id.*

12

the Original Allonges and the Corrective Allonges, the Note has been validly indorsed to [Plaintiff]; and (c) through the Omnibus Assignment Agreements, the Note has been assigned to [Plaintiff]."[51] Plaintiff argues that "all that is required under Article 3 for an indorsement of an instrument is 'a signature, other than that of a signer as a maker'"[52] and that "there is no requirement that an indorsement be witnessed or made under seal to prove a right to enforce."[53]

Plaintiff alternatively argues that, if the Court finds that Plaintiff is not a holder of the Note, then Plaintiff is a nonholder in possession of the Note with rights of a holder.[54] Plaintiff argues that physical possession of the Note delivered with the proper intent to transfer the rights under the Note to Plaintiff gives Plaintiff the right to enforce the Note.[55] Plaintiff contends that "the combination of physical possession of the Note, the execution of the Corrective Allonges, and the Omnibus Agreements incontrovertibly establish the [Plaintiff's] right to enforce the Note under Article 3."[56]

Next, Plaintiff argues that Defendant lacks standing to challenge the validity of the Mortgage and Note assignments.[57] Plaintiff asserts that "[i]t is a long standing principle of Delaware contract law that a person has no right to challenge

---

[51] *Id.* at 11-12.
[52] *Id.* at 12 (quoting 6 *Del. C.* § 3-204(a); Minn. Stat. § 336.3-204(a)).
[53] *Id.*
[54] *Id.*
[55] *Id.* at 13.
[56] *Id.* at 14.
[57] *Id.*

13

a contract unless it is a party to or third party beneficiary of that contract."[58] Plaintiff contends that the Court has applied this principle and determined that a borrower "lacks standing to challenge the validity or enforceability of an assignment of loans, loan documents, mortgages, and notes.[59] Plaintiff asserts that Defendant is neither a party to the Mortgage and Note assignments nor is a third party beneficiary of the assignments and, therefore, lacks standing to challenge the enforceability of the assignments.[60]

Plaintiff requests that the Court "enter judgment for [Plaintiff] and *in rem* against the Property in the amount of $20,000,057.81 as of February 11, 2014, plus interest from February 11, 2015 to June 8, 2015, in the aggregate amount of $2,244,263.33, plus interest from June 8, 2015 to the date of entry of judgment at the per diem rate of $4,646.51, interest from the date of judgment to the date of payment at the legal rate, attorney's fees and costs."[61] At oral argument, counsel for Plaintiff acknowledged that the $56,712.04 "Misc. Fees and Charges" component of the "Total Note Payoff" amount contained in ¶ 19 of the Amended Complaint was inaccurate. Counsel represented to the Court that he had made a clerical error in drafting the Amended Complaint in an attempt to lump together certain fees but asserted that the error did not affect the amount of the "Total Note

---

[58] *Id.*
[59] *Id.* at 15.
[60] *Id.* at 14-15.
[61] *Id.* at 16.

Payoff."  Counsel argued that the Payoff Amount from the "Payoff Statement" and the "Total Note Payoff" contained in the Amended Complaint are the same figure and that the 30(b)(6) Witness, testified by deposition, to the accuracy of the calculation of the "Payoff Amount."

Defendant argues that Plaintiff has not met its threshold burden to show that Plaintiff has standing to pursue the foreclosure action because Plaintiff is not the holder or assignee of both the Mortgage and the Note.[62]  Defendant argues that Plaintiff is not a holder under Article 3 of the U.C.C. because the Allonges and Corrective Allonges were not affixed to the Note at the time they were executed.[63] Defendant contends that "[i]f an 'endorsement' on an allonge is not properly 'affixed' to the Note, the allonge is defective and does not transfer rights to the instrument."[64]  Defendant asserts that "[i]n order for the 'endorsement' to be properly 'affixed' to the instrument, the allonge must be 'physically attached to the instruments' in some way"[65] and that "[u]nder controlling Minnesota law, '[s]tapling an allonge to the instrument sufficiently affixes it to the instrument so that it becomes 'a part thereof.'"[66]  Defendant argues that because none of the

---

[62] Def.'s Answering Br., at 9.
[63] *Id.* at 12.
[64] *Id.* at 13.
[65] *Id.* at 14 (quoting *Adams v. Madison Realty & Dev., Inc*., 853 F.2d 163 (3d Cir. 1998)).
[66] *Id.* (quoting *NAB Asset Venture II, L.P. v. Lenertz, Inc.*, 1998 WL 422207, at *2 (Minn. App. 1998)).

Allonges or Corrective Allonges were affixed to the Note at the time of execution, the Note was not properly endorsed.[67]

Defendant did not address whether or not Plaintiff is a nonholder in possession of the instrument with the rights of a holder in its submission to the Court. However, for the first time, at oral argument Defendant challenged Plaintiff's status as a nonholder in possession of the instrument with the rights of a holder under U.C.C. § 3-203. Defendant asserted that under § 3-203 of the U.C.C., to transfer a negotiable instrument, Plaintiff must show that there was intent to deliver the Note and actual delivery of the Note. Defendant argued that actual delivery of the Note was never accomplished because each of the prior alleged holders, *i.e.*, Wells Fargo, Bank of America and U.S. Bank, did not physically deliver the Note to the subsequent alleged holder because the Note remained in the same warehouse in Minneapolis, Minnesota except when it was temporarily sent to LNR in Miami Beach, Florida.

Additionally, Defendant argues that it has standing to challenge the validity of the alleged assignments of the Note because Plaintiff bears the initial burden of showing that it is either a holder or nonholder in possession with the rights of a holder.[68] Defendant asserts that, under Minnesota law, Defendant has standing to challenge whether an alleged holder or nonholder in possession with the rights of a

---
[67] *Id.* at 14.
[68] *Id.* at 11.

holder can enforce the Note.[69] Defendant also argues that "Defendant's standing to challenge Plaintiff's right to enforce the Note also follows as a matter of logic."[70] Defendant explains that

> [a]ssuming, *arguendo*, that Plaintiff was not required to prove that it is the proper party to enforce a Note, nothing would stop an unrelated third-party from also claiming at some future time that it has the right to enforce the Note against the Defendant…This would place Defendant in a double-jeopardy situation where it could be liable to another party for the sums under the Note even though the collateral, *i.e.* the Property, had been foreclosed and the loan was no longer secured.[71]

Defendant also disputes the accuracy of the Payoff Amount because Defendant asserts that there is nothing in the record to support the underlying calculation of the Payoff Amount "other than the February 2014 Payoff Statement."[72] Defendant contends that the calculation used by Plaintiff to create the "Payoff Statement" is complex and that "there is no way that Defendant or the Court could use the information in the record to recalculate the prepayment premium to verify its accuracy."[73] Specifically, Defendant disputes the accuracy of Plaintiff's characterization of $56,712.04 as "Misc. Fees and Charges" in the Amended Complaint.[74] Defendant contends that the record supports only $4,000

---

[69] *Id.*
[70] *Id.*
[71] *Id.* at 11-12.
[72] *Id.* at 14.
[73] *Id.* at 14-15.
[74] *Id.* at 15.

17

of the claimed "Misc. Charges and Fees" in ¶ 19 of the Amended Complaint based upon the deposition testimony of the 30(b)(6) Witness and is otherwise "not supported by invoices, receipts or other documents in the record."[75] At oral argument Defendant asserted that the 30(b)(6) Witness had no direct knowledge to support the underlying calculation in the Payoff Statement and, therefore, a genuine issue of fact exists such that the Plaintiff is not entitled to summary judgment.

## IV. STANDARD OF REVIEW

Super. Ct. Civ. R. 56(c) provides that summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[76] The moving party bears the initial burden of demonstrating that the undisputed facts support its claims or defenses.[77] If the moving party meets its initial burden, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact to be resolved by the ultimate fact-finder.[78] "It is not enough for the opposing party merely to assert the existence of such a disputed issue of fact. The

---

[75] *Id.*
[76] *Merrill v. Crothall-Am., Inc.,* 606 A.2d 96, 99-100 (Del. 1992).
[77] *Moore v. Sizemore,* 405 A.2d 679, 681 (Del. 1979).
[78] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

18

opponent to a motion for summary judgment 'must do more than simply show that there is some metaphysical doubt as to material facts.'"[79]  Summary judgment will be granted if, after viewing the record in the light most favorable to the non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[80]

## V.    DISCUSSION

To have standing to bring a mortgage foreclosure action, Plaintiff must establish by a preponderance of the evidence that it is the proper party to bring the action.[81]  Pursuant to 10 *Del. C.* § 5061(a),

> upon breach of the condition of a mortgage of real estate by nonpayment of the mortgage money or nonperformance of the condition stipulated in such mortgage at the time and in the manner therein provided the mortgagee, the mortgagee's heirs, executors, administrators, successors or assigns may, at any time after the last day whereon the mortgage money ought to have been paid or other conditions performed, sue out of the Superior Court of the county wherein the mortgage premises are situated a writ of scire facias upon such mortgage.

Defendant does not challenge the assignment of the Mortgage but challenges whether the Note was validly assigned.  Therefore, the Court's discussion is limited to whether Plaintiff may enforce the Note, whether Defendant has standing

---

[79] *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).
[80] *Merrill,* 606 A.2d at 99-100.
[81] *CitiMortgage, Inc. v. Bishop*, 2013 WL 1143670, at *4 (Del. Super. Jan. 9, 2013).

to challenge Plaintiff's foreclosure action and whether there is a genuine issue of fact as to the amount of the judgment Plaintiff requests.[82]

### A. The Factual Record is Undisputed that Plaintiff is Entitled to Enforce the Note Under Article 3 of the U.C.C. Because Plaintiff is a Non-Holder in Possession with the Rights of a Holder.

Pursuant to Article 3 of the U.C.C. as adopted in both Delaware and Minnesota, a promissory note is a negotiable instrument.[83] A party is entitled to enforce a negotiable instrument when the party is "(i) the holder of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of a holder…"[84] A holder is a "person in possession of a negotiable instrument either as the bearer or to the indentified person that is the person in possession."[85] The Comment to U.C.C. § 3-201(b)(21)(A) provides that "[a] nonholder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under Section 3-203(a) [of the U.C.C.]."[86]

Section 3-203(a) of the U.C.C. provides that "(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."[87]

---

[82] Plaintiff and Defendant both assert that Minnesota substantive law applies to the issue of the validity of the Allonges and Corrective Allonges; however, because, for reasons stated herein *infra*, the Court need not decide whether to apply Delaware or Minnesota law.
[83] 6 *Del. C.* § 3-104; Minn. Stat. 336.3-104.
[84] 6 *Del. C.* § 3-301; Minn. Stat. 336.3-301.
[85] 6 *Del. C.* § 1-201(b)(21)(A); Minn. Stat. 336.1-201(b)(21)(A).
[86] 6 *Del. C.* § 3-301 cmt.; Minn. Stat. 336.3-301 cmt.
[87] 6 *Del. C.* § 3-203(a); Minn. Stat. 336.3-203(a).

Comment 1 to U.C.C. § 3-203 instructs that "[a]n instrument is a reified right to payment. The right is represented by the instrument itself. The right to payment is transferred by delivery of possession of the instrument 'by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.'"[88] Therefore, to enforce the rights under the Note, Plaintiff must show that Plaintiff has physical possession of the Note, that the intent in transferring physical possession of the Note to Plaintiff was to deliver the right to enforce the instrument to Plaintiff and that actual delivery of the Note to Plaintiff was accomplished.[89]

The Court finds that the uncontroverted facts indicate that Plaintiff is a nonholder in possession of the Note with rights of a holder. Plaintiff physically possesses the Note,[90] the intent in transferring the Note to Plaintiff was to deliver the right to enforce the Note and the Note was actually delivered to Plaintiff. The executed documents supporting each of the four alleged assignments of the Note,[91] whether defective or not, were intended to transfer the Note "for the purpose of giving to the person receiving delivery the right to enforce the instrument."[92]

---

[88] 6 *Del. C.* § 3-203 cmt. 1; Minn. Stat. 336.3-203 cmt. 1.
[89] 6 *Del. C.* § 3-203(a); Minn. Stat. § 336.3-203(a).
[90] *See supra* note 33.
[91] The four alleged assignments are: from Wachovia to Wells Fargo; from Wells Fargo to Bank of America; from Bank of America to U.S. Bank; and from U.S. Bank to Plaintiff.
[92] 6 *Del. C.* § 3-203(a); Minn. Stat. § 336.3-203(a).

21

All four of the alleged assignments of the Note include three attempts, whether valid or invalid, by each alleged assignor[93] to assign the right to enforce the Note to a subsequent entity: the execution of an Allonge, the execution of a Corrected Allonge, and the execution of an omnibus assignment of rights. The executed Allonges and Corrective Allonges indicate that the Note is payable to a subsequent entity without recourse.[94] Additionally, each alleged assignor executed an omnibus assignment of rights document that includes language of the alleged assignor's intent to relinquish all rights under the Note to the subsequent entity.[95] Moreover, Defendant has failed to identify any facts in the record that would negate the alleged assignors' intent as set forth in the plain language of the documents. Therefore, there is no genuine dispute that each alleged assignment was accompanied by the intent to give the subsequent entity the right to enforce the Note.

Additionally, actual delivery of the Note by the alleged assignors to the subsequent entities was accomplished. Defendant argues that there are no facts in the record to support a finding that each alleged assignor accomplished actual delivery of the Note. However, the record is clear that, at all relevant times, Wells Fargo was the custodian of the Note even when the Note was physically sent to

---

[93] Wachovia, Wells Fargo, Bank of America and U.S. Bank.
[94] *See supra* Parts II.A.1-4.
[95] *See id.*

LNR in Miami Beach, Florida.[96] As the custodian of the Note, upon the completion of each alleged assignment, Wells Fargo would have had the obligation to actually deliver the Note to the subsequent custodian. In this case, Wells Fargo would have had the obligation to actually deliver the Note to itself. Because Wells Fargo remained the custodian of the Note at all times, the undisputed factual record shows that actual delivery of the Note was accomplished. Based upon the reasons aforementioned, it is undisputed that Plaintiff is a nonholder in possession of the Note with the rights of a holder and may enforce the Note under Article 3 of the U.C.C.

The Court need not address whether Plaintiff is also a holder under § 3-301 because the Court has found that the factual record indicates that Plaintiff is a nonholder in possession of the Note with the rights of a holder. Section 3-301 is written in the disjunctive so that satisfying one of the definitions of a "person entitled to enforce" is sufficient.[97] However, the Court has reservations regarding the merits of Defendant's claim that the Allonges and Corrective Allonges are defective because they were not properly "affixed" to the Note at the time of

---

[96] *See supra* note 32.

[97] 6 *Del. C.* § 3-301 and Minn. Stat. 336.3-301 provide that a

> "[p]erson entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d).

execution.  Section 3-204(a)(i) of the U.C.C. provides that an "endorsement" is "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument."[98]  The section further instructs that "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."[99]

Neither the statute nor the comments to the statute address when the executed paper shall be affixed to the document and do not expressly preclude the paper from being affixed to the Note at some later time after execution.  Furthermore, Defendant's reliance upon Minnesota case law that interprets a prior version of the statute does not clarify the timing question.  Therefore, the Court is unconvinced of the merits of Defendant's argument that the Allonges and Corrective Allonges are defective because they were not affixed to the Note contemporaneous to execution.  Nonetheless, despite its skepticism, the Court need not resolve the issue regarding the validity of the Allonges and Corrective Allonges for purposes of this Motion because the Court has already determined that Plaintiff is a nonholder in possession of the Note with the rights of a holder and is a person entitled to enforce the Note.

---

[98] 6 *Del. C.* § 3-204(a)(1) and Minn. Stat. 336.3-204(a)(1).
[99] *Id.*

**B.    Whether Defendant Has Standing to Challenge the Action is Inapposite to Resolving Plaintiff's Motion.**

This Court has held that mortgagors lack standing to challenge the assignment of loan documents where the mortgagor is not a party to or intended third-party beneficiary of the assignment under contract theory.[100]  On several recent occasions, the Delaware Supreme Court has declined to address the issue.[101]

---

[100] *See JP Morgan Chase Bank v. Smith*, 2014 WL 7466729, at *4 (Del. Super. Sept. 8, 2014)("Defendants lack standing to contest the validity of the assignment of the note to [p]laintiff because the [d]efendants are non-parties to the assignment and do not qualify as third-party beneficiaries."); *BAC Home Loans Servicing, LP v. Albertson*, 2014 WL 637659, at *4 (Del. Super. Feb. 10, 2014)("Under Delaware contract law, a nonparty to a contract generally has no rights relating to [the contract] unless he or she is a third-party beneficiary to the contract.

In order to qualify as a third-party beneficiary, a party must be an intended beneficiary. If a third-party happens to benefit from the performance of the contract indirectly, the third person has no rights under the contract.  This contract law principle is consistent with *Bishop's* statement that a debtor is not a party to a mortgage assignment, is not a third-party beneficiary to the assignment, and cannot show legal harm as a result of the assignment."); *CitiMortgage, Inc. v. Bishop*, 2013 WL 1143670, at *4 (Del. Super. Mar. 4, 2013)("Defendants' challenge to the validity of the mortgage is further diluted by their status as non-parties to the assignment and by recent federal court decisions that the Court finds persuasive on this matter which indicate that a mortgage-debtor lacks standing to challenge the validity of an assignment…").

[101] *See Bendfeldt v. HSBC Mortgage Corp. (USA)*, 2014 WL 4978666, at *1 (Del. Oct. 7, 2014)("As a preliminary matter, we assume without deciding that the [m]ortgagors had standing to challenge the assignments in this case. The issue of whether and, if so, when mortgagors have standing to challenge an assignment is an important one that we need not and therefore do not reach to decide this appeal because the [m]ortgagors' challenge is without merit."); *Albertson v. BAC Home Loans Servicing, LP*, 2014 WL 4952362, at *2 (Del. Oct. 1, 2014)("As to the instant case, we assume without deciding that the Albertsons had standing to challenge the assignment at issue. The issue of whether and, if so, when mortgagors have standing is an important one that we need not and therefore do not reach to decide this appeal because the Albertsons' claims substantively lack merit."); *Deutsche Bank Nat. Trust Co. v. Moss*, 2014 WL 2918227, at *4 (June 24, 2014)("Deutsche Bank made other colorable legal arguments below in opposition to Moss's summary judgment motion that were never considered by the Superior Court. These include arguments that Moss lacked standing to challenge the assignment of the mortgage…Deutsche Bank has asked us to consider these legal arguments and to reverse the Superior Court on legal grounds, but we decline the invitation to address important issues of law…").

Defendant asserts that Minnesota law controls this issue and that "[u]nder Minnesota law, a borrower has standing to challenge whether an alleged holder or non-holder has the lawful right to enforce the instrument."[102]  However, the case that Defendant relies upon, *NAB Asset Venture II, LP v. Lenertz, Inc.*, 1998 WL 42207 (Minn. App. 1998), does not explicitly support Defendant's argument.  In *Lenertz*, the Court of Appeals of Minnesota entertained argument from a borrower that the plaintiff "failed to prove the necessary elements of its claim to enforce lost, stolen, or destroyed instruments under Minn. Stat. § 336.3.3-309(a)."  Therefore, the authority does not directly address the issue of Defendant's standing to challenge Plaintiff's status as a holder or nonholder in possession of the Note with rights of a holder.  Because the Court has already determined that the record is clear that Plaintiff is a nonholder in possession with rights of a holder,[103] the Court declines to reach the issue of whether or not Defendant has standing.

C.    **There is No Genuine Dispute Concerning the Amount of the Judgment Requested by Plaintiff.**

Super. Ct. Civ. R. 30(b)(6) provides, in part, that

> A party may in the party's notice name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or

---

[102] Def.'s Answering Br., at 11.
[103] *See supra* Part V.A.

managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to matters known or reasonably available to the organization.

Under Delaware law "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."[104] Therefore, the Court limits the deposition testimony it considers on summary judgment to that which the Court is satisfied that the witness has personal knowledge.[105]

Plaintiff's 30(b)(6) Witness testified that she personally reviewed the underlying documents that Plaintiff relied upon in categorizing certain expenses as "Misc. Charges and Fees" in ¶ 19 of the Amended Complaint.[106] The 30(b)(6) Witness testified that the amount that makes up the "Misc. Charges and Fees" in the Amended Complaint should have been $4,000 instead of $56,000 based upon the underlying invoices but that, despite the error, the "Total Note Payoff" in the Amended Complaint was unaffected.[107] Therefore, the Court is satisfied that the 30(b)(6) Witness has personal knowledge regarding the "Misc. Charges and Fees" and that the "extra" $52,000 is not included in the total Payoff Amount.

---

[104] *CNH Industrial Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 1242650, at *3 (Del. Super. Mar. 10, 2015)(quoting Del. R. Evid. 602)).

[105] *See id.* (The Court struck portions of the Super. Ct. Civ. R. 30(b)(6) witness' affidavit where the witness testified to facts that occurred prior to his employment at the company and involvement with the case).

[106] *See supra* note 41.

[107] *See supra* note 42.

Because Plaintiff has demonstrated that the amount of the judgment requested is supported by the record, the burden shifts to Defendant to raise a genuine issue of material fact. Defendant has presented no credible facts that undermine the accuracy of the Payoff Amount contained in the "Payoff Statement." Section 1.5 of the Note provides the mechanism for performing and verifying the calculation.[108] Defendant merely asserts that the underlying calculation cannot be easily verified due to its complexity. However, Defendant has not brought forth facts that show, for example, that Plaintiff did not follow the calculation set forth in § 1.5 of the Note, that Plaintiff used inaccurate information to complete the calculation or that Plaintiff made some particular error when completing the calculation. Defendant's bald allegation that the calculation is too complex to verify without any factual support demonstrating some particular error in the calculation is insufficient to establish that a genuine issue of material fact exists.[109] Therefore, Plaintiff is entitled to summary judgment in the amount requested.

## VI. CONCLUSION

The Court finds that there is no genuine dispute that Plaintiff is entitled to enforce the Note under Article 3 of the U.C.C. and that Plaintiff may commence a foreclosure action against the Property under 10 *Del. C.* § 5061(a). Additionally,

---

[108] *See* Pl.'s Opening Br., at Ex. B.
[109] *See Brzoska*, 668 A.2d at 1364.

the Court finds that there is no genuine dispute regarding the amount of the judgment Plaintiff requests.  Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED**.


**IT IS SO ORDERED.**



_____
/s/Ferris W. Wharton, Judge